## PEOPLE ex rel. EISMAN v. RONNER, Register.

(Supreme Court, Special Term, New York County. November 9, 1905.)

1. STATUTES—CONSTITUTIONAL LAW—APPROPRIATING PUBLIC MONEY.

Laws 1905, p. 2059, c. 729, § 307, providing that, after receiving the mortgage tax moneys from the recording officers of the counties, the county treasurers shall transmit half of the amount to the State Treasurer, and shall hold the other half subject to the order of the boards of supervisors, though appropriating half of such tax money to the counties, does so before it reaches the state treasury, so as to bear the impress of state money; and so is not within Const. art. 3, § 20, requiring the assent of two-thirds of each branch of the Legislature to a bill appropriating public money for local purposes.

2. CONSTITUTIONAL LAW—EQUAL PROTECTION OF LAWS.

Laws 1905, p. 2059, c. 729, providing for taxation of mortgages, does not deny the equal protection of the law, in contravention of Const. U. S. Amend. 14, because made applicable only to mortgages recorded after July 1, 1905; it making no distinction between persons in the same class or condition.

3. SAME—FREEDOM OF CONTRACT—USURY.

Laws 1905, p. 2079, c. 729, § 309, providing that any contract in respect to a mortgage obligation, other than a mortgage obligation executed by a corporation, by which the mortgagor is bound to pay any of the mortgage tax, shall be usurious, is not unconstitutional as interfering with freedom of contract.

4. SAME—DUE PROCESS OF LAW.

Laws 1905, p. 2059, c. 729, imposing a tax on mortgages, does not deprive citizens of their property without due process of law, because of the absence of a provision for notice or opportunity to be heard concerning the tax on mortgages when offered for record, or because there is no provision for ascertaining the actual value of the obligation or mortgage.

5. TAXATION—HOME RULE—ASSESSMENTS.

Laws 1905, p. 2059, c. 729, providing for a mortgage tax, does not violate the principle of home rule embodied in Const. art. 10, § 2, by withdrawing from local assessors the right and power theretofore possessed and exercised by them of assessing and taxing tangible property; such power as there is, in the way of arriving at the amount on which the tax shall be assessed, not being a power of assessing, but of estimating and computing, and the recording officers of the several counties to whom this power is given being local officers.

Mandamus, on relation of Michael H. Eisman, against John H. J. Ronner, register of the county of New York. Heard on motion for peremptory writ. Denied.

Cahn & Lazansky (Edward Lazansky, Emanuel S. Cahn, and Louis Franklin Levy, of counsel), for the motion.

Julius M. Mayer, Atty. Gen., opposed.

GIEGERICH, J. This application for a writ of peremptory mandamus requiring the defendant to record the mortgage of the relator with-

out the payment of the tax imposed by chapter 729, p. 2059, of the Laws of 1905, is based upon the claim that the act referred to, commonly known as the "Mortgage Tax Law," is unconstitutional.

The first defect urged is that the act violates section 20 of article 3 of the state Constitution, which provides that:

"The assent of two-thirds of the members elected to each branch of the Legislature shall be requisite to every bill appropriating the public moneys or property for local or private purposes."

Section 307 of the act in question provides that, after receiving the tax moneys from the recording officers of the respective counties, the treasurer of the county, or the chamberlain of the city in the case of the counties embraced in New York City, after deducting the necessary expenses provided for in the act, shall—

"Transmit one-half of this net amount collected under the provisions of this article, to the State Treasurer. * * * And the remaining portion thereof in the counties of New York, Kings, Queens and Richmond shall be paid into the general fund of the city of New York and be applied to the reduction of taxation, and in the other counties of the state the remaining portion shall be held by the respective county treasurers subject to the order of the board of supervisors as hereinafter provided."

This method of operation brings the act named, in my judgment, within the authority of the decision made by the Court of Appeals in People ex rel. Einsfeld v. Murray, 149 N. Y. 367, 44 N. E. 146, 32 L. R. A. 344, where precisely the same objection was raised under chapter 112, p. 45, of the Laws of 1896, in regard to excise moneys, and where the court said, at page 377 of 149 N. Y., page 148 of 44 N. E. (32 L. R. A. 344):

"The act of 1896, we think, appropriates to the towns and cities the two-thirds of the excise taxes which may be collected under the act. But it is an appropriation which operates on the fund at the very moment of its collection. The two-thirds so appropriated never reaches the treasury of the state and never bears the impress of state money."

So in this case the portion of the tax allowed to the several counties is retained in those counties, and never reaches the state treasury, and never receives the impress of state moneys.

Neither do I think that the objection is well taken that this act violates the provisions of section 1 of article 14 of the amendments to the Constitution of the United States, in denying the equal protection of the law to the holders of mortgages recorded after July 1, 1905. It is true that the law bears unequally, in the sense that it applies to mortgages recorded after the date mentioned, and not to those previously recorded; but such an inequality of operation is more or less incident to any tax law, and is not the form of evil at which the constitutional amendment referred to was aimed. The exent to which the Supreme Court of the United States has gone in upholding the taxing powers of the sovereign states is indicated in the following cases, which are especially applicable to the point now under discussion: State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892; Savings & Loan Society v. Multnomah County, 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803; New York ex rel. Metropolitan Street R. Co. v. State Bd.

of Tax Com'rs, 199 U. S. 1, 25 Sup. Ct. 705, 50 L. Ed. ——. With the justice or wisdom of the act under consideration the courts have nothing to do, those being questions for the Legislature exclusively. The act makes no distinction between persons in the same class or condition, and therefore does not offend the constitutional provision referred to.

Neither do I think that the statute interferes with the freedom of contract. Section 309, p. 2079, Laws 1905, does provide that:

"Any contract or agreement in respect to any mortgage obligation or deed of trust, other than mortgage obligations and deeds of trust executed by corporations, by which the mortgagor shall agree or be bound to pay the tax or any part thereof imposed by this article, shall be usurious and void."

And it is contended that this prohibition might result in declaring usurious a contract which in fact called for much less than 6 per cent. interest, as, for example, where the mortgage rate was 4 per cent., in which case, with the tax added, the rate paid by the borrower would be only 4½ per cent. Such supposititous cases are affected only in form, however, and not at all in substance, by the provision just quoted, because the agreement could equally well take the form of a rate of 4½ per cent., instead of 4 per cent. and the tax. Besides, the Legislature doubtless had reasons appearing sufficient to itself for the enactment of this safeguard against any evasion of the purpose of the act. Moreover, I am not aware of, nor does the relator call attention to, any authority restricting the power of the Legislature to declare what is or is not usury. So far as the distinction between corporations and individuals is concerned, this is one which has long existed in the statutes relating to usury, and is one clearly within the power of the Legislature to make.

Neither does this act deprive citizens of their property without due process of law. It is true that there is no provision for notice or opportunity to be heard concerning the tax on mortgages which are offered for record for the first time, nor is there any provision for ascertaining the actual value of the obligation or the mortgage. The relator argues that, as the debtor upon the bond may be insolvent and the mortgage of less value than its face, an opportunity should be given of presenting such facts before the tax is levied; but, as said before, no tax law can be made perfect, and Legislatures may well find that it is better to proceed on some fixed, although somewhat arbitrary, system of appraisal, than to introduce confusion and uncertainty and worse evils by leaving too much elasticity, in the hope that the law can be more justly adapted to individual cases.

It is further asserted that the act is in violation of article 10, § 2, of the state Constitution, and of the principle of home rule therein embodied, and that it withdraws from local assessors the right and power, theretofore possessed and exercised by them, of assessing and taxing tangible property. The only authority cited in support of this claim is People ex rel. Metropolitan St. Ry. Co. v. Tax Commissioners, 174 N. Y. 417, 67 N. E. 69. It is not pointed out how anything said in that case sustains the assertion that there is an infraction of the section now in question, and I can discover no such infraction. Properly speaking, there is no discretion of assessing vested in any one by the act.

Such power as there is, in the way of arriving at the amount on which the tax shall be paid, is not a power of assessing, in any correct sense, but of estimating and computing, which latter are the words of the statute. Moreover, whatever power there is in this respect is given to local officers, viz., the recording officers of the respective counties.

My conclusion is that no unconstitutionality has been shown, and that the motion should be denied.